Slip Op. 19-23

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SOC TRANG SEAFOOD JOINT STOCK COMPANY ET AL.,** | |
| **Plaintiffs and Consolidated Plaintiff,** | |
| **and** | |
| **CA MAU SEAFOOD JOINT STOCK COMPANY,** | |
| **Plaintiff-Intervenor,** | |
| **v.** | **Before: Claire R. Kelly, Judge**<br>**Consol. Court No. 16-00205** |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **AD HOC SHRIMP TRADE ACTION COMMITTEE,** | |
| **Defendant-Intervenor and Consolidated Defendant-Intervenor.** | |

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's remand redetermination in the tenth administrative review of certain frozen warmwater shrimp from the Socialist Republic of Vietnam.]

Dated: February 19, 2019

Matthew Robert Nicely, Daniel Martin Witkowski, and Julia K. Eppard, Hughes Hubbard & Reed LLP, of Washington, DC, for plaintiffs, Soc Trang Seafood Joint Stock Company a/k/a Stapimex; Trong Nhan Seafood Company Limited; Sao Ta Foods Joint Stock Company a/k/a Fimex VN a/k/a Saota Seafood Factory; Nha Trang Seafoods Group: Nha Trang Seaproduct Company a/k/a NT Seafoods Corporation a/k/a Nha Trang Seafoods - F.89 Joint Stock Company a/k/a NTSF Seafoods Joint Stock Company; Viet Foods Co., Ltd.; UTXI Aquatic Products Processing Corporation a/k/a Hoang Phuong Seafood Factory a/k/a Hoang Phong Seafood Factory; Camau Frozen Seafood Processing Import Export Corporation a/k/a Camau Seafood Factory No. 4; Ngoc Tri Seafood Joint Stock

Company; Investment Commerce Fisheries Corporation; Quang Minh Seafood Co., Ltd.; Phuong Nam Foodstuff Corp.; Minh Cuong Seafood Import Export Frozen Processing Joint Stock Company; Minh Hai Joint-Stock Seafoods Processing Company; Cadovimex Seafood Import-Export and Processing Joint Stock Company; Can Tho Import Export Fishery Limited Company; Danang Seaproducts Import Export Corporation a/k/a Danang Seaproducts Import-Export Corporation a/k/a Seaprodex Danang a/k/a Tho Quang Co. a/k/a Tho Quang Seafood Processing and Export Company a/k/a Frozen Seafoods Factory No. 32; Vietnam Clean Seafood Corporation; Viet I-Mei Frozen Foods Co., Ltd.; Kim Anh Company Limited  a/k/a Kim Anh Co., Ltd.; Viet Hai Seafood Co., Ltd. a/k/a Vietnam Fish One Co., Ltd.; Thuan Phuoc Seafoods and Trading Corporation; Bac Lieu Fisheries Joint Stock Company; Nha Trang Fisheries Joint Stock Company; Thong Thuan Company Limited a/k/a T&T Co., Ltd.; Cuulong Seaproducts Company; Camau Seafood Processing and Service Joint Stock Company; Quoc Viet Seaproducts Processing Trading and Import-Export Co., Ltd.; C.P. Vietnam Corporation; and Minh Hai Export Frozen Seafood Processing Joint-Stock Company, and for plaintiff-intervenor, Ca Mau Seafood Joint Stock Company a/k/a Seaprimexco Vietnam.

Robert George Gosselink, Jonathan Michael Freed, and Jarrod Mark Goldfeder, Trade Pacific, PLLC, of Washington, DC, for consolidated plaintiff, Mazzetta Company LLC.

Kara Marie Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant.  With her on the brief were Patricia M. McCarthy, Assistant Director, Jeanne E. Davidson, Director, and Joseph H. Hunt, Assistant Attorney General.  Of Counsel on the brief was James Henry Ahrens, II, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Nathaniel Jude Maandig Rickard and Sophia J.C. Lin, Picard, Kentz & Rowe, LLP, of Washington, DC, for defendant-intervenor and consolidated defendant-intervenor, Ad Hoc Shrimp Trade Action Committee.

Kelly, Judge:    Before the court is the U.S. Department of Commerce's ("Department" or "Commerce") remand redetermination filed pursuant to the court's order in Soc Trang Seafood Joint Stock Co. v. United States, 42 CIT __, __, 321 F. Supp. 3d 1329, 1353–54 (2018) ("Soc Trang").  See Final Results of Redetermination Pursuant to Ct. Remand in [Soc Trang], Sept. 19, 2018, ECF No. 74-1 ("Remand Results").

In Soc Trang, the court addressed challenges to Commerce's final determination in the tenth administrative review of the antidumping duty ("ADD") order covering certain

frozen warmwater shrimp from the Socialist Republic of Vietnam ("Vietnam").  See Soc

Trang, 42 CIT at __, 321 F. Supp. 3d at 1335–53; see also Certain Frozen Warmwater

Shrimp From [Vietnam], 81 Fed. Reg. 62,717 (Dep't Commerce Sept. 12, 2016) (final

results of [ADD] admin. review, 2014–2015) ("Final Results") and accompanying Certain

Frozen Warmwater Shrimp from [Vietnam]: Issues & Decision Mem. for the Final Results,

A-552-802, (Sept. 6, 2016), ECF No. 19-2 ("Final Decision Memo"); see also Certain

Frozen Warmwater Shrimp From [Vietnam], 70 Fed. Reg. 5,152 (Dep't Commerce Feb.

1, 2005) (notice of am. final determination of sales at less than fair value & [ADD] order).

The court remanded to Commerce for further explanation or reconsideration: (i) its

decision to value frozen shrimp using Bangladeshi UN Comtrade data for Harmonized

Tariff Schedule ("HTS") 0306.13, see Soc Trang, 42 CIT at __, 321 F. Supp. 3d at 1350–

51, 1353–54, and (ii) its decision to deny an offset for excess/scrap packaging.  See id.

at __, 321 F. Supp. 3d at 1352–54.  For the following reasons, Commerce complied with

the court's remand order in Soc Trang and its remand redetermination is in accordance

with law and is supported by substantial evidence.

## BACKGROUND

The court assumes familiarity with the facts of this case as discussed in the prior

opinion, see Soc Trang, 42 CIT at __, 321 F. Supp. 3d at 1334–35, and here restates the

facts relevant to the court's review of the Remand Results.  At the time of Commerce's

final determination in the tenth administrative review, Soc Trang Seafood Joint Stock

Company ("Stapimex") was the sole mandatory respondent under review.[1]  See Final Decision Memo at 2–3; see also [ADD] Admin. Review of Certain Frozen Warmwater Shrimp from [Vietnam]: Selection of Respondents for Individual Examination at 9, PD 71, bar code 3273103-01 (Apr. 29, 2015).[2]  Pertinent here, in the final determination, Commerce valued the frozen shrimp input using Bangladeshi UN Comtrade data for HTS 0306.13, covering "Shrimps & prawns, whether/not in shell, frozen."  See Final Decision Memo at 46–48.  Commerce explained its selection by stating that when the record only contains data sources from basket HTS categories, as happened here, it prefers to use data from the primary surrogate country, which is Bangladesh for the purposes of this review.  See id. at 47.  Commerce also declined to grant a byproduct offset for packaging materials that respondent re-sold as scrap; the materials at issue were either directly purchased by respondent, but not used to pack the finished subject merchandise, or were acquired by respondent from purchases of raw shrimp.  See id. at 67–68.  Commerce explained that it denied the offset because its practice is to grant offsets to byproducts generated in relation to, or as a result of, the production of subject merchandise and that the packaging materials at issue here were not so generated.  See id.

---

[1] Commerce rescinded its review of the second mandatory respondent.  See Certain Frozen Warmwater Shrimp From [Vietnam], 81 Fed. Reg. 47,758 (Dep't Commerce July 22, 2016) (partial rescission of [ADD] admin. reviews (2014–2015; 2015–2016).

[2] On December 6, 2016, Defendant submitted indices to the public and confidential administrative records underlying Commerce's final determination.  These indices are located on the docket at ECF No. 19-3–4.  With the court's leave, Defendant filed corrected indices to the remand redetermination; they are docketed at ECF No. 79 and 79-1.  Citations to administrative record documents in this opinion will be to the numbers assigned to the documents by Commerce in these indices, with documents to the remand redetermination also including an "RR" marker.

In <u>Soc Trang</u>, the court sustained in part and remanded in part the <u>Final Results</u>.[3] <u>See</u> <u>Soc Trang</u>, 42 CIT at __, 321 F. Supp. 3d at 1353–54.  The court remanded for further explanation or reconsideration Commerce's valuation of the frozen shrimp input and decision to deny an offset for packaging material.  <u>See</u> <u>id.</u> at __, 321 F. Supp. 3d at 1350–51, 1352–54.  The court stated that Commerce did not address record evidence indicating that the alternative data source, i.e., Indian Global Trade Atlas ("GTA") import data for HTS 0306.17, was more specific than the selected Bangladeshi data or explain why, in light of such evidence and the fact that only the Indian GTA data was contemporaneous to the relevant period of review, its determination was reasonable.  <u>See</u> <u>id.</u> at __, 321 F. Supp. 3d at 1350–51.  The court also stated that Commerce did not explain why its practice of rejecting packaging material as a byproduct is reasonable.  <u>See</u> <u>id.</u> at __, 321 F. Supp. 3d at 1352–53.

Commerce filed the <u>Remand Results</u> on September 19, 2018.  On remand, Commerce reconsidered its valuation of the frozen shrimp input using Bangladeshi UN Comtrade data for HTS 0306.13 and determined that the Indian GTA import data for HTS 0306.17 constituted the best available information because it is more specific to the input and more contemporaneous with the period of review.  <u>See</u> <u>Remand Results</u> at 8–9, 15–20.  Commerce also further explained its practice for determining what constitutes a

---

[3] Specifically, the court sustained Commerce's application of its differential pricing analysis, <u>see</u> <u>Soc Trang</u>, 42 CIT at __, 321 F. Supp. 3d at 1335–41, and surrogate value selections for head and shell byproduct and ice.  <u>See</u> <u>id.</u> at __, 321 F. Supp. 3d at 1349–50, 1351–52.  The court also sustained Commerce's decision to rescind the review of a mandatory respondent and its calculation of the all-others rate.  <u>See</u> <u>id.</u> at __, 321 F. Supp. 3d at 1344–48.  Finally, the court determined that Commerce fulfilled its statutory duty to maintain a complete and accurate administrative record.  <u>See</u> <u>id.</u> at __, 321 F. Supp. 3d at 1341–44.

byproduct and explained why, in light of this practice, respondent's packaging scrap is not a byproduct.  See id. at 9–13, 22–24.  Plaintiffs Soc Trang Seafood Joint Stock Company a/k/a Stapimex et al. and Plaintiff-Intervenor, Ca Mau Seafood Joint Stock Company a/k/a Seaprimexco Vietnam (collectively "Respondents") filed comments challenging Commerce's continued denial of a byproduct offset for packaging scrap.  See Pls. & Pl.-Intervenor's Comments Final Results of Redetermination Pursuant Ct. Remand at 1–4, Oct. 19, 2018, ECF No. 80 ("Respondents' Remand Comments").  Defendant-Intervenor, Ad Hoc Shrimp Trade Action Committee filed comments challenging the agency's changed position regarding valuation of frozen shrimp.  See Def.-Intervenor Ad Hoc Shrimp Trade Action Comm.'s Comments Final Results of Redetermination Ct. Remand at 10–27, Oct. 19, 2018, ECF No. 81 ("Def.-Intervenor's Remand Comments").

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012) and 28 U.S.C. § 1581(c) (2012). Commerce's antidumping determinations must be in accordance with law and supported by substantial evidence.  19 U.S.C. § 1516a(b)(1)(B)(i) (2012).  "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'"  Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai Strip Mill Public Co. v. United States, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008)).

**DISCUSSION**

**I.  Frozen Shrimp**

On remand, Commerce valued the frozen shrimp input using Indian GTA import data for HTS 0306.17, covering "Shrimps And Prawns, Frozen, Other Than Cold-Water." See Remand Results at 8–9.  Specifically, the agency explained that the Bangladeshi import data did not constitute the best available information because it was not contemporaneous and not as specific to the frozen warmwater shrimp utilized by respondents.  Id.  Defendant-Intervenor challenges the agency's redetermination.  See Def.-Intervenor's Remand Comments at 10–27.  For the following reasons, Commerce's valuation of the frozen shrimp input is sustained.

In antidumping proceedings involving non-market economies,[4] Commerce generally calculates normal value using the factors of production used to produce the subject merchandise and other costs and expenses.  19 U.S.C. § 1677b(c)(1).  Commerce will value respondents' factors of production using the "best available information regarding the values of such factors in a market economy country or countries considered to be appropriate by [Commerce]." 19 U.S.C. § 1677b(c)(1)(B).  To the extent possible, Commerce uses factors of production from market economy countries that are: "(A) at a level of economic development comparable to that of the nonmarket economy country, and (B) significant producers of comparable merchandise."  19 U.S.C. §

---

[4] The term "nonmarket economy country" refers to a foreign country that Commerce determines "does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise."  19 U.S.C. § 1677(18)(A).  In such cases, Commerce must "determine the normal value of the subject merchandise on the basis of the value of the factors of production utilized in producing the merchandise . . . [together with other costs and expenses]."  19 U.S.C. § 1677b(c)(1)(B).

1677b(c)(4).   Commerce's regulatory preference is to "value all factors in a single surrogate country."  19 C.F.R. § 351.408(c)(2) (2015).

Commerce's methodology for selecting the best available information evaluates data sources based upon their: (1) specificity to the input; (2) tax and import duty exclusivity; (3) contemporaneity with the period of review; (4) representativeness of a broad market average; and (5) public availability.  <u>See</u> Import Admin., U.S. Dep't Commerce, Non-Market Economy Surrogate Country Selection Process, Policy Bulletin 04.1 (Mar. 1, 2004), <u>available at</u> http://ia.ita.doc.gov/policy/bull04-1.html (last visited Feb. 13, 2019); Final Decision Memo at 46–47.  Commerce uses the same methodology to calculate the surrogate value of byproducts generated during the production process, and offsets a respondent's production costs by the value of those byproducts.  <u>See</u> Final Decision Memo at 57–58; <u>see also</u> <u>Tianjin Magnesium Int'l Co. v. United States</u>, 34 CIT 980, 993, 722 F. Supp. 2d 1322, 1336 (2010); <u>Guangdong Chems. Imp. & Exp. Corp. v. United States</u>, 30 CIT 1412, 1422–23, 460 F. Supp. 2d 1365, 1373–74 (2006).

Commerce's decision, on remand, to value the frozen shrimp input using Indian GTA import data is reasonable.  The agency explains that the Indian GTA data is more specific to the input utilized by respondents because it is limited in scope to warmwater shrimp and is more contemporaneous with the relevant period of review because it is from 2015.  <u>See</u> <u>Remand Results</u> at 8–9.  By contrast, Commerce explains that the Bangladeshi data, reported for 2011, is not contemporaneous and is not as specific because it includes shrimp from coldwater regions.  <u>See</u> <u>id.</u>  Commerce states that petitioner's inference that the Indian GTA import data for HTS 0306.17 includes data from

a coldwater region is not supported by record evidence and is speculative. Id. at 16–17.

There is no record evidence to suggest that the category is not specific. Id. Commerce

also addresses petitioner's claim that the Indian GTA import data is "skewed" or captures

unlike products given the large variations in the average unit values reported for the

countries in that dataset; Commerce explains that petitioner's claim is speculative

because the price variances could be explained by differences in physical characteristics

of the shrimp and for which subheading 0306.17 does not account. Id. at 17–18.  Further,

Commerce rejected petitioner's claim that the Indian GTA data was not a broad market

average because it contained data points from only three countries.  Id. at 19–20.

Commerce did not find the amount of imports insignificant and noted that one would

expect the Indian dataset to contain a lesser quantity than the Bangladeshi dataset as the

latter contained both warmwater and coldwater shrimp.   Remand Results at 20.

Commerce also concluded that having imports from only three countries did not preclude

a finding that the dataset is a broad market average.[5] Id. at 19–20. Defendant-Intervenor

restates these same challenges before the court.[6]   See Def.-Intervenor's Remand

---

[5] Defendant-Intervenor also argues that the Indian GTA data only reflects data collected from three shipments, which it contends further undermines the conclusion that the dataset represents a broad market average.  See Def.-Intervenor's Remand Comments at 24–25.  Commerce explains that petitioner's assumption is not supported by record evidence because although the Indian GTA data is reported over the course of three months and includes imports from three countries, nothing on the record indicates that the data points represent three shipments.  See Remand Results at 20

[6] Defendant-Intervenor argues that it was arbitrary and capricious for Commerce to conclude that the Bangladeshi data was less specific because it contained imports form coldwater regions, when both the Indian and Bangladeshi datasets contain imports from the United Kingdom, a purportedly coldwater region.  See Def.-Intervenor's Remand Comments at 10–15.  Further, the

(footnote continued)

Comments at 10–25.  Commerce addressed each of these challenges and Defendant-Intervenor did not demonstrate that Commerce either failed to respond to its challenges or that Commerce's determination was unreasonable on this record.  The court will not reweigh the evidence.  Accordingly, Commerce's selection of the Indian GTA import data for HTS 0306.17 to value the frozen shrimp input is reasonable and supported by substantial evidence.

## II.  Commerce's Denial of an Offset for Packaging Scrap

On remand, Commerce continued to deny an offset for packaging scrap and further explained its practice for evaluating byproduct offset claims.  See Remand Results at 10–13.  Respondents contend that the agency did not adhere to the court's remand order to further explain the reasonableness of its practice and merely reasserted its position from the final determination, and that the remand redetermination is not supported by substantial evidence.  See Respondents' Remand Comments at 1–4.  For the following reasons, Commerce sufficiently explained its practice and its decision to deny an offset is sustained.

Pursuant to the relevant statute, in a non-market economy Commerce will calculate the normal value of a given product by valuing "the factors of production utilized in producing the good[.]"  19 U.S.C. § 1677b(c)(1)(A)–(B).  The statute, however, does not direct how Commerce is to determine which products qualify for the byproduct offset

---

Defendant-Intervenor argues that Commerce failed to address record evidence that detracts from its determination that the Indian GTA data constitutes the best available information.  See id. at 15–27. Defendant-Intervenor emphasizes that the volume of imports and number of shipments reflected in the Indian GTA import data do not reflect a broad market average and that the data includes dissimilar products and shipments from a purportedly coldwater region.  See id. at 21–27.

and no regulation exists to fill the gap.  In such a situation, Commerce has the discretion

to set the standards by which items qualify for a byproduct offset, so long as Commerce's

selection satisfies the overall purpose of the ADD statute, to calculate accurate dumping

margins and is reasonable.  See Rhone Poulenc, Inc. v. United States, 899 F.2d 1185,

1191 (Fed. Cir. 1990); see also QVD Food Co. v. United States, 658 F.3d 1318, 1323

(Fed. Cir. 2011).

The agency explains that because the statute is silent on how byproducts should

be treated when calculating normal value, it adopted a practice pursuant to which only

the sales income of materials consumed during the production process will qualify for a

byproduct offset.  See Remand Results at 9–10; Final Decision Memo at 67–68.  On

remand, the agency provides further explanation of its practice.  See Remand Results at

10–13, 22–24.   Specifically, it explains that, consistent with generally acceptable

accounting practices, revenue generated from activities unrelated to production is

recorded as miscellaneous income that generally offsets selling, general and

administrative costs, as opposed to costs of goods sold.  See id. at 10–11.  Indeed,

Commerce notes that Stapimex records packaging sales revenue in a trade receivables

account associated with miscellaneous income and not in the main sales revenue account

for shrimp sales/production activity.  See id. at 11–12.  Accordingly, although Commerce

agrees that revenue from sales of scrap should be offset, id. at 10, Commerce determined

it would be improper for that revenue to offset the cost of manufacturing.[7]  See id. at 11–

---

[7] Respondents argue that Commerce misread record evidence to determine that the packaging

(footnote continued)

12.   Rather, Commerce presumes that the proper offsets are captured in the surrogate financial statements.  Id.  Respondents do not point to any record evidence detracting from the reasonableness of Commerce's presumption.  On remand, Commerce complied with the court's order in Soc Trang and its explanation is in accordance with law and supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Remand Results comply with the court's order in Soc Trang, are in accordance with law and supported by substantial evidence, and are sustained.  Judgment will enter accordingly.

  /s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated: February 19, 2019
New York, New York

---

scrap is not generated during the production process and that the determination is therefore unsupported by record evidence.  See Respondents' Remand Comments at 3–4.  Commerce identifies record evidence showing that: (1) income from scrap sales is not recorded in the main business revenue account, i.e., the account used to reconcile sales, see Remand Results at 23 (citing Bus. Proprietary Mem. Accompanying [Remand Results], RR CD 10, bar code 3755076-01 (Sept. 19, 2018); Exs. D16A–B [attached to Respondents' Sec. D. Questionnaire Resp.], CD 513–15, bar codes 3288686-18–20 (July 6, 2015)), and (2) the general ledger for one of the cost accounts reproduced in these exhibits specifically records sales of packaging scrap in a cash receivables account, which Commerce explains signals "that packing scrap is not considered part of the main business income (i.e., the income earned from selling shrimp)."  Id.  As Commerce explains, when determining whether to grant a byproduct offset it matters where a company records the sales of the claimed byproduct, not where the costs for purchasing that claimed byproduct are booked.  Id.  Commerce's explanation is reasonable.